Stephen E. Hessler, P.C.
Marc Kieselstein, P.C.
Cristine Pirro Schwarzman
**KIRKLAND & ELLIS LLP**
**KIRKLAND & ELLIS INTERNATIONAL LLP**
601 Lexington Avenue
New York, New York 10022
Telephone: (212) 446-4800
Facsimile: (212) 446-4900

James H.M. Sprayregen, P.C.
Ross M. Kwasteniet, P.C. (*pro hac vice* pending)
Brad Weiland (*pro hac vice* pending)
John R. Luze (*pro hac vice* pending)
**KIRKLAND & ELLIS LLP**
**KIRKLAND & ELLIS INTERNATIONAL LLP**
300 North LaSalle Street
Chicago, Illinois 60654
Telephone: (312) 862-2000
Facsimile: (312) 862-2200

*Proposed Counsel to the Debtors and Debtors in Possession*

**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**

| | | |
|---|---|---|
| In re: | ) | Chapter 11 |
| WINDSTREAM HOLDINGS, INC., *et al.*,[1] | ) | Case No. 19-22312 (RDD) |
| Debtors. | ) | (Joint Administration Requested) |

# DEBTORS' MOTION FOR ENTRY OF INTERIM AND FINAL ORDERS AUTHORIZING THE DEBTORS TO (I) PAY PREPETITION EMPLOYEE WAGES, SALARIES, OTHER COMPENSATION, AND REIMBURSABLE EMPLOYEE EXPENSES AND (II) CONTINUE EMPLOYEE BENEFITS PROGRAMS

Windstream Holdings, Inc. and its debtor affiliates as debtors and debtors in possession in the above-captioned chapter 11 cases (collectively, the "Debtors") respectfully state the following in support of this motion (this "Motion"):

[1] The last four digits of Debtor Windstream Holdings, Inc.'s tax identification number are 7717. Due to the large number of debtor entities in these chapter 11 cases, for which the Debtors have requested joint administration, a complete list of the debtor entities and the last four digits of their federal tax identification numbers is not provided herein. A complete list of such information may be obtained on the website of the Debtors' proposed claims and noticing agent at http://www.kccllc.net/windstream. The location of the Debtors' service address for purposes of these chapter 11 cases is: 4001 North Rodney Parham Road, Little Rock, Arkansas 72212.

## Relief Requested

1. The Debtors seek entry of interim and final orders, substantially in the forms attached hereto as **Exhibit A** and **Exhibit B** (respectively, the "Interim Order" and "Final Order"), authorizing the Debtors to (a) pay prepetition wages, salaries, other compensation, and reimbursable employee expenses and (b) continue employee compensation and benefits programs in the ordinary course, including payment of certain prepetition obligations related thereto. In addition, the Debtors request a final hearing be scheduled by the Bankruptcy Court (as defined below) within approximately 25 days of the Petition Date to consider approval of this Motion on a final basis.

## Jurisdiction and Venue

2. The United States Bankruptcy Court for the Southern District of New York (the "Bankruptcy Court") has jurisdiction over this matter pursuant to 28 U.S.C. §§ 157 and 1334 and the *Amended Standing Order of Reference from the United States District Court for the Southern District of New York*, dated February 1, 2012. The Debtors confirm their consent, pursuant to rule 7008 of the Federal Rules of Bankruptcy Procedure (the "Bankruptcy Rules"), to the entry of a final order by the Bankruptcy Court in connection with this Motion to the extent that it is later determined that the Bankruptcy Court, absent consent of the parties, cannot enter final orders or judgments in connection herewith consistent with Article III of the United States Constitution.

3. Venue is proper pursuant to 28 U.S.C. §§ 1408 and 1409.

4. The bases for the relief requested herein are sections 105(a), 362(d), 363(b), 507(a), and 541(b)(1) of title 11 of the United States Code (the "Bankruptcy Code"), Bankruptcy Rules 6003 and 6004, and Rule 9013-1(a) of the Local Bankruptcy Rules for the Southern District of New York (the "Local Rules").

**Background**

5. The Debtors are a leading provider of advanced network communications and technology solutions for businesses across the United States. The Debtors also offer broadband, entertainment and security solutions to consumers and small businesses primarily in rural areas in 18 states. Additionally, the Debtors supply core transport solutions on a local and long-haul fiber network spanning approximately 150,000 miles. As of the date hereof, the Debtors had approximately 11,600 employees.

6. As set forth in greater detail in the *Declaration of Tony Thomas, Chief Executive Officer and President of Windstream Holdings, Inc., (I) in Support of Debtors' Chapter 11 Petitions and First Day Motions and (II) Pursuant to Local Bankruptcy Rule 1007-2* (the "First Day Declaration"), on February 15, 2019, the United States District Court for the Southern District of New York entered a *Memorandum Decision and Order* against Debtor Windstream Services, LLC after trial in the matter styled *U.S. Bank National Association v. Windstream Services, Inc. v. Aurelius Capital Master, Ltd.*, Case No. 17-cv-7857 (JMF), that recognized an event of default under the Debtors' prepetition unsecured bond indentures, which in turn resulted in a cross-default under the Debtors' secured term loan and revolver credit facilities. As of the date hereof, the Debtors are obligated for approximately $5.6 billion in funded debt obligations. To avoid any precipitous action against the Debtors' assets that would have harmed the Debtors' businesses and to gain access to much-needed liquidity in the form of debtor-in-possession financing, the Debtors commenced these chapter 11 cases.

7. On February 25, 2019 (the "Petition Date"), each of the Debtors filed a voluntary petition for relief under chapter 11 of the Bankruptcy Code. The Debtors continue to operate their business and manage their property as debtors in possession pursuant to sections 1107(a) and 1108 of the Bankruptcy Code. As of the date hereof, the Office of the United States Trustee for the

Southern District of New York (the "U.S. Trustee") has not appointed an official committee of unsecured creditors in these chapter 11 cases. Additional information regarding the Debtors' business, their capital structure, and the circumstances leading to these chapter 11 filings is contained in the First Day Declaration.

**The Debtors' Workforce**

8. As of the Petition Date, the Debtors employed approximately 11,600 employees (the "Employees"), virtually all of whom are full-time Employees. Approximately 6,300 Employees are compensated on an hourly basis, and approximately 5,300 of them are salaried. As of the Petition Date, the Debtors were party to 22 unexpired collective bargaining agreements (the "CBAs"), as well as to two National Pension Plan agreements bargained separately from the CBAs (the "NPP Agreements"). Approximately 1,600 unionized Employees (the "Represented Employees") are represented pursuant to either the CBAs or the NPP Agreements. Additionally, the Employees perform a wide variety of functions which will be critical to the Debtors' go-forward business operations and the administration of these chapter 11 cases. In many instances, the Employees include personnel who are intimately familiar with the Debtors' businesses, processes, and systems, who possess unique skills and experience to the core business segments of the Debtors, and/or who have developed relationships with wholesalers and distributors that are essential to the Debtors' business. Without the continued, uninterrupted services of the Employees, the ability of the Debtors to maintain and administer their estates will be materially impaired.

9. In addition to the Employees, as of the Petition Date, the Debtors retained from time to time specialized individuals as independent contractors (collectively, the "Independent Contractors") to complete discrete projects, as well as temporary workers (collectively, the "Temporary Staff"), to fulfill certain duties, including customer service, packaging, and

shipping functions. As of the Petition Date, the Debtors retained approximately 200 Independent Contractors and Temporary Staff in the aggregate.

10. The Employees, Independent Contractors, and Temporary Staff rely on their compensation and benefits to pay their daily living expenses. These individuals could experience significant financial constraints if the Bankruptcy Court does not permit the Debtors to continue paying their compensation and providing them with health and other benefits. Accordingly, the Debtors respectfully submit that the relief requested herein is necessary and appropriate under the facts and circumstances of these chapter 11 cases.

**Employee Compensation and Benefits**

11. By this Motion, the Debtors seek authority to: (a) pay and honor certain prepetition claims relating to, among other things, Wage Obligations, Unpaid Contractor and Temporary Staffing Obligations, Withholding Obligations, Reimbursable Expenses, Health and Welfare Coverage and Benefits, a Workers' Compensation Program and a Workers' Compensation Insurance Policy, the 401(k) Plan and other retiree benefits, Paid Leave Benefits, Severance Obligations, and certain other benefits that the Debtors have provided in the ordinary course (each as defined below, and collectively, the "Employee Compensation and Benefits"); and (b) pay all costs related to or on account of the Employee Compensation and Benefits.

12. Subject to court approval, the Debtors intend to continue their applicable prepetition Employee Compensation and Benefits in the ordinary course. Out of an abundance of caution, the Debtors further request confirmation of their right to modify, change, and/or discontinue any of their Employee Compensation and Benefits and/or to implement new programs, policies, and benefits in the ordinary course of business on a postpetition basis during these chapter 11 cases in the Debtors' sole discretion and without the need for further Court approval, subject to applicable law.

## I. Compensation, Withholding, Payroll Processing, and Expense Reimbursement.

### A. Wage Obligations.

13. In the ordinary course, the Debtors have incurred obligations to their Employees for, among other things, salaries, wages, overtime, Commissions (as defined below), certain incentive payments, and other similar obligations (collectively, the "Wage Obligations"). The Debtors pay their Employees on a bi-weekly, which accrue on either a salaried or hourly basis. The Debtors' average bi-weekly gross Wage Obligations, including salaries, wages, Commissions (as defined below), and related compensation, has been approximately $39,000,000.00 for the Employees. The majority of the Debtors' payroll is made by direct deposit through electronic transfer of funds to the Employees' bank accounts or other electronic means.

14. Certain of the Debtors' sales-dedicated Employees receive commissions (the "Commissions") as a substantial percentage of their income. The Commissions are essential to optimally incentivize and stimulate sales, which is ultimately for the benefit of the Debtors' enterprise. Approximately 2,800 Employees are eligible for Commissions. As of the Petition Date, the Debtors estimated that they owe approximately $4,100,000.00 in accrued but unpaid Commissions.

15. As of the Petition Date, certain prepetition Wage Obligations are due and owing on account of certain hourly workers owed in arrears. Further, certain Employees may be entitled to unpaid compensation due to (a) discrepancies that may exist between the amounts actually paid by the Debtors and the amounts that the Debtors were required to pay and (b) some checks issued to Employees before the Petition Date may not have been presented for payment, or may not have cleared the Debtors' banking system and, accordingly, may not have been honored and paid as of the Petition Date.

16. During the 2018 calendar year, the Debtors have incurred a monthly average of approximately $77,000,000.00 on account of the Wage Obligations. Additionally, as of the Petition Date, the Debtors estimate that they owe approximately $25,500,000.00 on account of accrued but unpaid Wage Obligations (the "Unpaid Compensation"). Accordingly, the Debtors respectfully request that the Bankruptcy Court authorize them to continue such programs and policies and to pay any prepetition or postpetition claims with respect thereto, in each case, in the ordinary course of business on a postpetition basis.

17. For the avoidance of doubt, as of the Petition Date, the Debtors do not believe that they owe any obligations on account of Wage Obligations in excess of the statutory cap of $12,850 set forth in sections 507(a)(4) and 507(a)(5) of the Bankruptcy Code.

**B. Unpaid Contractor and Temporary Staffing Obligations**.

18. During the 2018 calendar year, the Debtors have incurred a monthly average of approximately $2,500,000.00 on account of payments to Independent Contractors and Temporary Staff. In addition, as of the Petition Date, the Debtors estimate that Independent Contractors and Temporary Staff are owed an aggregate of approximately $2,100,000.00 on account of services rendered prior to the Petition Date (the "Unpaid Contractor and Temporary Staffing Obligations"). The Debtors pay their Independent Contractors and Temporary Staff through the TAPFIN Manpower Solutions Group ("TAPFIN") as an intermediary. These Independent Contractors and Temporary Staff perform a wide range of services critical to the Debtors' operations, including, among other things, customer service, packaging, and shipping functions. The Employees rely on the support of the Independent Contractors and Temporary Staff to complete certain tasks in furtherance of the Debtors' businesses. The Debtors believe the authority to continue paying their Independent Contractors and Temporary Staff (through the intermediation of TAPFIN) is critical to maintaining and administering their estates. Accordingly, the Debtors respectfully request that

the Bankruptcy Court authorize the Debtors to continue such programs and policies and to pay any prepetition or postpetition claims with respect thereto, in each case, in the ordinary course of business on a postpetition basis.

**C. Withholding Obligations and Payroll Taxes**.

19. During each applicable payroll period, the Debtors routinely deduct certain amounts from Employees' paychecks, including garnishments, child support, and similar deductions, as well as other pre-tax and after-tax deductions payable pursuant to certain employee benefit plans discussed herein, such as an Employee's share of healthcare benefits and insurance premiums, 401(k) contributions, legally ordered deductions, union dues, and miscellaneous deductions (collectively, the "Deductions"), and forward such amounts to various third-party recipients. The Debtors only retain payments related to the Employee's share of health care benefits and insurance premiums.

20. In addition to the Deductions, certain federal and state laws require that the Debtors withhold certain amounts from Employees' gross pay related to federal, state, and local income taxes, as well as Social Security and Medicare taxes (collectively, the "Employee Payroll Taxes") for remittance to the appropriate federal, state, or local taxing authorities. The Debtors must then match the Employee Payroll Taxes from their own funds and pay, based on a percentage of gross payroll, additional amounts for federal and state unemployment insurance and Social Security and Medicare taxes (the "Employer Payroll Taxes" and, together with the Employee Payroll Taxes, the "Payroll Taxes"). The Payroll Taxes are generally processed and forwarded to the appropriate federal, state, and local taxing authorities in accordance with remittance intervals and deadlines established by those taxing authorities.

21. During the 2018 calendar year, the Debtors have accumulated a monthly average of approximately $29,200,000.00 on account of the Withholding Obligations. Additionally, as of

the Petition Date, the Debtors estimate that they owe approximately $5,000,000.00 on account of the Deductions and the Payroll Taxes (collectively, the "Withholding Obligations"). Accordingly, the Debtors respectfully request that the Bankruptcy Court authorize the Debtors to continue such programs and policies and to pay any prepetition or postpetition claims with respect thereto, in each case, in the ordinary course of business on a postpetition basis.

**D. Payroll Processing.**

22. Certain Withholding Obligations for the Debtors' Employees are processed and administered by IBM. During the 2018 calendar year, the Debtors have incurred a monthly average of approximately $56,000.00 on account of these payroll processing and application hosting services. Additionally, as of the Petition Date, the Debtors estimate they owe approximately $56,000.00 on account of prepetition payroll processing services (the "Unpaid Payroll Processing Fees"). Accordingly, the Debtors respectfully request that the Bankruptcy Court authorize the Debtors to continue such programs and policies and to pay any prepetition or postpetition claims with respect thereto, in each case, in the ordinary course of business on a postpetition basis.

**E. Reimbursable Expenses.**

23. Prior to the Petition Date and in the ordinary course of business, the Debtors reimbursed certain Employees for approved expenses incurred on behalf of the Debtors in the scope of their employment (the "Reimbursable Expenses"). Reimbursable Expenses include, among other expenses, travel-related expenses such as air travel, meal allowances, car mileage allowances, and business related entertainment expenses. Employees who pay for their own Reimbursable Expenses up front apply for reimbursement of such expenses by submitting an expense report to the Debtors. Once they have determined that the charges are for allowable

reimbursable business expenses, the Debtors have typically reimbursed such Employees for any such expenses.

24. In certain cases, however, Reimbursable Expenses are processed through a system based on use of the Debtors' corporate card, which is provided by Bank of America, N.A. (the "Corporate Card and e-Payables Program"). Under the Corporate Card and e-Payables program, Reimbursable Expenses that would otherwise be paid upfront by Employees and then reimbursed by the Debtors are instead charged directly to the Debtors corporate card.

25. The Debtors' inability to reimburse the Reimbursable Expenses could impose a hardship on the Employees where such individuals incurred obligations for the Debtors' benefit. Employees incurred the Reimbursable Expenses as business expenses on the Debtors' behalf and with the understanding that such expenses would be reimbursed.

26. During the 2018 calendar year, the Debtors have incurred a monthly average of approximately $300,000.00 on account of the Reimbursable Expenses. Additionally, as of the Petition Date, the Debtors estimate that they owe approximately $110,000 on account of Reimbursable Expenses. Accordingly, the Debtors respectfully request that the Bankruptcy Court authorize the Debtors to continue such programs and policies and to pay any prepetition or postpetition claims and fees with respect thereto, in each case, in the ordinary course of business on a postpetition basis. For the avoidance of doubt, the Debtors will not seek to pay any outstanding Reimbursable Expenses or fees related thereto in advance of the date they come due.

## II. Health and Welfare Coverage and Benefits.

27. The Debtors have offered their Employees the ability to participate in a number of health, insurance and benefits programs, including, among other programs, medical, health management, prescription, supplemental medical, well-being, dental, and vision coverage plans, life and accident insurance, disability insurance, savings and spending account programs, and other

employee benefit plans (collectively, the "Health and Welfare Coverage and Benefits"). The Health and Welfare Benefits are, in each case, available to Employees depending on factors including their level with the company and their length of service (the "Eligible Employees").

28. The Debtors' Health and Welfare Coverage and Benefits include:

a. Medical and Prescription Coverage: The Debtors provide a self-funded program in conjunction with various insurance carriers. In addition of the ability to choose carriers, the Employees can also choose from among four high-deductible health plans with a $600 employer Health Savings Account, or alternatively, a $500 employer Flexible Spending Account contribution is offered. On average, the Debtors cover 75 percent of the cost of premiums, while the employees cover the remaining 25 percent. Spouses, children and some grandchildren are eligible dependents. Some Represented Employees also have a Preferred Provider Organization plan to choose from (collectively with the other forms of coverage described in this paragraph, the "Medical and Prescription Coverage"). Approximately 80% of employees enroll in Medical and Prescription Coverage. The annual cost of the Medical and Prescription Coverage is approximately $100,000,000.00. As of the Petition Date, the Debtors estimate they owe approximately $13,000,000.00 on account of incurred but yet unpaid Medical and Prescription claims and administrative fees.

b. Life Insurance Coverage: The Debtors provide basic life insurance (at an amount calculated based on 50 percent of the Employee's salary), basic accidental death and dismemberment insurance (at an amount calculated based on 50 percent of the Employee's salary), long- and short-term disability insurance to all active Employees who are working 30 or more hours per week and who have satisfied the new hire waiting period, as well as supplemental, spouse, and child life products offered on a voluntary, Employee-paid basis ("Life Insurance Coverage"). The average annual cost of the Life Insurance Coverage is approximately $4,200,000 excluding voluntary products. As of the Petition Date, the Debtors estimate they owe approximately $1,500,000.00 on account of unpaid Life Insurance Coverage.

c. Dental and Vision Insurance Coverage: The Debtors provide dental and vision fully insured plans provided by Delta Dental Insurance and VSP Global, respectively ("Dental and Vision Insurance Coverage"). 50 percent of the dental premium is employer-paid and none of the vision premium is employer-paid. The average annual cost of the Dental and Vision Insurance Coverage is approximately

$10,100,000.00. As of the Petition Date, the Debtors estimate they owe approximately $1,600,000 on account of unpaid Dental and Vision Insurance Coverage.

d. Other Coverage: Other voluntary, Employee-paid benefits are offered such as critical illness, accident, hospitalization, pet, auto, home and legal insurance.

29. During the 2018 calendar year, the Debtors have incurred a monthly average of approximately $11,000,000.00 on account of the Health and Welfare Coverage and Benefits. Additionally, as of the Petition Date, the Debtors estimate they owe approximately $20,000,000 on account of unpaid Health and Welfare Coverage and Benefits. As described above, failure to continue the Health and Welfare Coverage and Benefits could cause Employees to experience severe hardship and make it difficult to retain the workforce. Accordingly, the Debtors respectfully request that the Bankruptcy Court authorize the Debtors to continue such programs and policies and to pay any prepetition or postpetition claims with respect thereto, in each case, in the ordinary course of business on a postpetition basis.

## III. Workers' Compensation and Other Insurance Programs.

### A. Workers' Compensation.

30. The Debtors maintain workers' compensation insurance for their Employees at the statutorily required level for each state in which they have Employees (collectively, and as described herein, the "Workers' Compensation Program"). The Debtors maintain a workers' compensation policy with a stop-loss insurance policy (the "Workers' Compensation Insurance Policy") with Chubb Corporation and its affiliates ("Chubb") as part of the Workers' Compensation Program.

31. The Debtors must continue the claim assessment, determination, adjudication, and payment pursuant to the Workers' Compensation Program, without regard to whether such liabilities are outstanding before the Petition Date, to ensure that the Debtors comply with

applicable workers' compensation laws and requirements. There are approximately 200 open claims (the "Workers' Compensation Claims") under the Workers' Compensation Policies, with an amount totaling approximately $16,300,000.00. As of the Petition Date, the Debtors estimate that they owe approximately $9,700,000 on account of the Workers' Compensation Claims. The Debtors seek authority to continue the Workers' Compensation Programs in the ordinary course on a postpetition basis.[2]

## IV. The 401(k) Plan and Retirement Programs.

32. As of the Petition Date, the Debtors maintain a retirement savings plan for the benefit of their Employees that satisfies the requirements of section 401(k) of the Internal Revenue Code (the "401(k) Plan"). The 401(k) Plan is administered by Bank of America Merrill Lynch and allows for automatic pre-tax salary deductions of eligible compensation up to the limits set forth by the Internal Revenue Code.

33. The Debtors also match non-bargaining Employees' 401(k) contributions dollar for dollar up to 3% of eligible pay and $0.50 on the dollar for the contributions those Employees make on the next 2% of eligible pay, with a maximum match of 4% of eligible pay (the "401(k) Matching Contributions"). The 401(k) Matching Contributions are made on an annual basis following the end of the calendar year.

34. During the 2018 calendar year, the Debtors incurred approximately $27,000,000.00 on account of the 401(k) Matching Contributions. As of the Petition Date, the Debtors estimate that they owe approximately $31,500,000.00 on account of the 401(k) Matching Contributions,

[2] Certain of the Debtors' Workers' Compensation Programs may change postpetition in the ordinary course due to changes in applicable laws and regulations and the Debtors' ability to meet requirements thereunder. By this Motion, the Debtors request authority to continue the Workers' Compensation Programs postpetition, including making any changes to current policies and practices that become necessary.

which includes the amounts accrued during the 2018 calendar year, as well as accrued amounts for January 2019 and prorated accrued amounts for February 2019. The Debtors respectfully request that the Bankruptcy Court authorize the Debtors to continue 401(k) Matching Contributions and to pay any prepetition or postpetition claims with respect thereto, in each case, in the ordinary course of business on a postpetition basis.

35. The CBAs to which the Debtors are party also require four additional active pension plans for Represented Employees (the "CBA Pension Plans"), two of which are set to expire approximately within the 10 months, and the other two approximately within the next 30 months. During the 2018 calendar year, the Debtors incurred approximately $17,600,000.00 on account of the CBA Pension Plans, in the form of minimum required pension contributions. As of the Petition Date, the Debtors estimate that they owe approximately $12,200,000.00 in additional minimum required pension contributions required to be made in calendar year 2019 on account of the CBA Pension Plans. The Debtors respectfully request that the Bankruptcy Court authorize the Debtors to continue the CBA Pension Plans and to pay any prepetition or postpetition claims with respect thereto, in each case, in the ordinary course of business on a postpetition basis.

36. Additionally, the Debtors offer approximately 2,500 of their retirees access to their Medical and Prescription Coverage, Life Insurance Coverage, Dental and Vision Insurance Coverage, or other similar benefits (the "Retiree Coverage"). In the case of certain union-represented retirees, such coverage is subsidized. The Debtors' average monthly cost of maintaining their Retiree Coverage is approximately $450,000.00. As of the Petition Date, the Debtors estimate they owe approximately $550,000 on account of Retiree Coverage. The Debtors respectfully request that the Bankruptcy Court authorize the Debtors to continue the Retiree

Coverage and to pay any prepetition or postpetition claims with respect thereto, in each case, in the ordinary course of business on a postpetition basis.

37. Finally, the Debtors pay 73 of their retired former Employees (and in certain cases, their surviving spouses) monthly payments averaging approximately $120,000.00 (the "Benefit Restoration Plan"). The Benefit Restoration Plan was created to restore lost corporate contributions to certain Employees, which resulted from certain prior acquisitions. The Debtors respectfully request that the Bankruptcy Court authorize the Debtors to continue the Benefit Restoration Plan and to pay any prepetition or postpetition claims with respect thereto, in each case, in the ordinary course of business on a postpetition basis.

**V. Paid Leave Benefits.**

38. The Debtors have, in the past, provided paid time off to certain eligible Employees as a benefit (the "Paid Leave Benefits"). The Debtors' Paid Leave Benefits program combines vacation, sick, parental leave, and personal days. When an Employee elects to use Paid Leave Benefits, that Employee is paid his or her regular hourly or salaried rate. In the case of Paid Leave Benefits related to vacation time, an Employee is only entitled to a prorated cash payment for unused Paid Leave Benefits in the event that such Employee is terminated from the Debtors' employment.

39. During the 2018 calendar year, the Debtors' Employees have earned approximately $140,000,000.00 on account of the Paid Leave Benefits. Additionally, as of the Petition Date, the Debtors estimate that approximately $131,000,000.00 in Paid Leave Benefits has been earned by Employees. The Debtors seek authority to pay any amounts due with respect to earned but unused Paid Leave Benefits for terminated Employees and to continue the Paid Leave Benefits policies in the ordinary course on a postpetition basis.

## VI. Additional Benefit Programs.

40. In addition to the foregoing, the Debtors offer the Employees the opportunity to participate in a range of ancillary benefits, including pet insurance, discounts on auto and home insurance, identity theft protection, a legal plan, and other employee wellness programs (the "Additional Benefit Programs"). The aggregate cost of the Additional Benefit Programs is *de mimimis*. Accordingly, the Debtors respectfully request that the Bankruptcy Court authorize the Debtors to continue such programs and policies and to pay any prepetition or postpetition claims with respect thereto, in each case, in the ordinary course of business on a postpetition basis.

## VII. Non-Insider Severance Obligations.

41. The Debtors maintain several severance programs (the "Severance Obligations"). Employees are owed anywhere from 10 to 260 days of base salary as severance depending on their location, seniority, and job description. In 2018, the Debtors incurred approximately $20,300,000.00 on account of the Severance Obligations. As of the Petition Date, the Debtors estimate that there are approximately $10,300,000.00 on account of unpaid Severance Obligations. The Debtors seek authority to pay any prepetition amounts on account of Severance Obligations to non-insiders only and to continue to honor obligations in respect of the Severance Obligations to non-insiders only in the ordinary course of business and consistent with historical practices.

# Basis for Relief

## I. Sufficient Cause Exists to Authorize the Debtors to Honor the Employee Compensation and Benefits Obligations.

### A. Certain of the Employee Compensation and Benefits Are Entitled To Priority Treatment.

42. Sections 507(a)(4) and 507(a)(5) of the Bankruptcy Code entitle the majority of the Employee Compensation and Benefits to priority treatment. As priority claims, the Debtors are required to pay these claims in full to confirm a chapter 11 plan. *See* U.S.C. § 1129(a)(9)(B)

(requiring payment of certain allowed unsecured claims, given priority under sections 507(a)(4) and 507(a)(5) of the Bankruptcy Code, for (a) wages, salaries or commissions, including vacation, severance, and sick leave pay earned by an individual and (b) contributions to an employee benefit plan). To the extent that an Employee receives no more than $12,850 on account of claims entitled to priority, the relief sought with respect to compensation only affects the timing of payments to Employees and does not have any material negative impact on recoveries for general unsecured creditors. Indeed, the Debtors submit that payment of the Employee Compensation and Benefits at this time enhances value for the benefit of all interested parties. Finding, attracting, and training new qualified talent would be extremely difficult and would most likely require higher salaries, guaranteed bonuses, and more comprehensive compensation packages than are currently provided to Employees.

### B. Payment of Certain Employee Compensation and Benefits Is Required by Law.

43. The Debtors seek authority to pay the Withholding Obligations to the appropriate third-party payees. These amounts principally represent Employee earnings that governments, Employees, and judicial authorities have designated for deduction from Employees' Wages. Indeed, certain Withholding Obligations are not property of the Debtors' estates because the Debtors have withheld such amounts from Employees' Wages on another party's behalf. *See* 11 U.S.C. §§ 541(b)(1), (d). Further, federal and state laws require the Debtors to withhold certain tax payments from Employees' Wages and to pay such amounts to the appropriate taxing authority. 26 U.S.C. §§ 6672, 7501(a); *see also City of Farrell v. Sharon Steel Corp.*, 41 F.3d 92, 95–97 (3d Cir. 1994) (finding that state law requiring a corporate debtor to withhold city income tax from its employees' wages created a trust relationship between debtor and the city for payment of withheld income taxes); *In re DuCharmes & Co.*, 852 F.2d 194, 196 (6th Cir. 1988) (noting that individual

officers of a company may be held personally liable for failure to pay trust fund taxes). Because the Withholding Obligations may not be property of the Debtors' estates, the Debtors request authorization to transmit the Withholding Obligations to the proper parties in the ordinary course of business.

44. Similarly, state laws require the Debtors to maintain the Workers' Compensation Program. If the Debtors fail to maintain the Workers' Compensation Program, state laws may prohibit the Debtors from operating in those states. Payment of all obligations related to the Workers' Compensation Program is therefore crucial to the Debtors' continued operations and the success of these chapter 11 cases.

## II. Payment of the Employee Compensation and Benefits Is Warranted Under Section 363(b)(1) of the Bankruptcy Code and the Doctrine of Necessity.

45. Courts generally acknowledge that it is appropriate to authorize the payment (or other special treatment) of prepetition obligations in appropriate circumstances. *See, e.g.*, *In re Ionosphere Clubs, Inc.*, 98 B.R. 175 (Bankr. S.D.N.Y. 1989) (granting authority to pay prepetition wages); *see also Armstrong World Indus., Inc. v. James A. Phillips, Inc.*, (*In re James A. Phillips, Inc.*), 29 B.R. 391, 398 (S.D.N.Y. 1983) (granting authority to pay prepetition claims of suppliers who were potential lien claimants). In authorizing payments of certain prepetition obligations, courts have relied on several legal theories, rooted in sections 1107(a), 1108, 363(b), 507, and 105(a) of the Bankruptcy Code.

46. Pursuant to sections 1107(a) and 1108 of the Bankruptcy Code, debtors in possession are fiduciaries "holding the bankruptcy estate[s] and operating the business[es] for the benefit of [their] creditors and (if the value justifies) equity owners." *In re CoServ, L.L.C.,* 273 B.R. 487, 497 (Bankr. N.D. Tex. 2002). Implicit in the fiduciary duties of any debtor in possession is the obligation to "protect and preserve the estate, including an operating business's going-

concern value." *Id.* Some courts have noted that there are instances in which a debtor can fulfill this fiduciary duty "only . . . by the preplan satisfaction of a prepetition claim." *Id.* The *CoServ* court specifically noted that satisfaction of prepetition claims would be a valid exercise of the debtor's fiduciary duty when the payment "is the only means to effect a substantial enhancement of the estate." *Id.*

47. Consistent with a debtor's fiduciary duties, courts have also authorized payment of prepetition obligations under section 363(b) of the Bankruptcy Code where a sound business purpose exists for doing so. *See, e.g.*, *In re Ionosphere Clubs*, 98 B.R. at 175 (discussing prior order authorizing payment of prepetition wage claims pursuant to section 363(b) and noting that relief is appropriate where payment is needed to "preserve and protect its business and ultimately reorganize, retain its currently working employees and maintain positive employee morale."); *see also Armstrong*, 29 B.R. at 397 (relying on section 363 to allow contractor to pay prepetition claims of suppliers who were potential lien claimants because the payments were necessary for general contractors to release funds owed to debtors). Specifically, the business judgment standard requires that a debtor "articulate some business justification, other than mere appeasement of major creditors." *In re Ionosphere Clubs*, 98 B.R. at 175.

48. In addition, courts may authorize payment of prepetition claims in appropriate circumstances based on section 105(a) of the Bankruptcy Code. Section 105(a) codifies the Bankruptcy Court's inherent equitable powers to "issue any order, process, or judgment that is necessary or appropriate to carry out the provisions of this title." Under section 105(a), courts may authorize pre-plan payments of prepetition obligations when essential to the continued operation of a debtor's businesses. *See In re C.A.F. Bindery, Inc.*, 199 B.R. 828, 835 (Bankr. S.D.N.Y. 1996); *see also In re Fin. News Network Inc.*, 134 B.R. 732, 735–36 (Bankr. S.D.N.Y. 1991)

(holding that the "doctrine of necessity" stands for the principle that a bankruptcy court may allow pre-plan payments of prepetition obligations where such payments are critical to the debtor's organization"). Specifically, the Bankruptcy Court may use its power under section 105(a) of the Bankruptcy Code to authorize payment of prepetition obligations pursuant to the "necessity of payment" rule (also referred to as the "doctrine of necessity"). *See In re Ionosphere Clubs*, 98 B.R. at 176.

49. The Debtors submit that the payment of the Employee Compensation and Benefits represents a sound exercise of the Debtors' business judgment, is necessary to avoid immediate and irreparable harm to the Debtors' estates, and is therefore justified under sections 105(a) and 363(b) of the Bankruptcy Code. Paying prepetition wages, employee benefits, and similar obligations will benefit the Debtors' estates and their creditors by allowing the Debtors' business operations to continue without interruption. Indeed, the Debtors believe that without the relief requested herein, Employees may seek alternative employment opportunities, perhaps with the Debtors' competitors. Such a development would deplete the Debtors' workforce, thereby hindering the Debtors' ability to operate their business and, likely, diminishing stakeholder confidence in the Debtors' ability to successfully reorganize. The loss of valuable Employees and the resulting need to recruit new personnel (and the costs attendant thereto) would be distracting at this crucial time when the Debtors need to focus on stabilizing their business operations. Accordingly, the Debtors must do their utmost to retain their workforce by, among other things, continuing to honor all wage, benefits, and related obligations, including the prepetition Employee Compensation and Benefits.

50. In addition, the majority of Employees rely exclusively on the Employee Compensation and Benefits to satisfy their daily living expenses. Many of the Debtors' Employees

expect and require their wages to arrive on a timely basis. Consequently, Employees will be exposed to significant financial difficulties if the Debtors are not permitted to honor their obligations related thereto expeditiously. Moreover, failure to satisfy such obligations will jeopardize Employee morale and loyalty at a time when Employee support is critical to the Debtors' businesses. Furthermore, if this Court does not authorize the Debtors to honor their various obligations under the insurance programs described herein, Employees will not receive health coverage and, thus, may be obligated to pay certain health care claims that the Debtors have not satisfied. The loss of health care coverage will result in considerable anxiety for Employees (and likely attrition) at a time when the Debtors need such Employees to perform their jobs at peak efficiency. Additionally, as set forth above, Employee attrition would cause the Debtors to incur additional expenses to find appropriate and experienced replacements, severely disrupting the Debtors' operations at this critical juncture.

51. The importance of a debtor's employees to their operations has been repeatedly recognized by courts in this district, and such courts have granted relief similar to the relief requested herein. *See, e.g.*, *In re Aegean Marine Petrol. Network Inc.*, Case No. 18-13374 (MEW) (Bankr. S.D.N.Y. Dec. 6, 2018) (authorizing debtors to continue employee compensation and benefit programs and pay certain prepetition obligations related thereto on a postpetition basis); *In re Nine West Holdings, Inc.*, Case No. 18-10947 (SCC) (Bankr. S.D.N.Y. Apr. 9, 2018) (same); *In re Cenveo Inc.*, Case No. 18-22178 (RDD) (Bankr. S.D.N.Y. Feb. 2, 2018) (same); *In re 21st Century Oncology Holdings, Inc.*, Case No. 17-22770 (RDD) (Bankr. S.D.N.Y. June 20, 2017)

(same); *In re BCBG Max Azria Glob. Holdings, LLC*, Case No. 17-10466 (SCC) (Bankr. S.D.N.Y. Mar. 29, 2017) (same)).[3]

52. Accordingly, the Debtors respectfully request that the Bankruptcy Court authorize the Debtors to pay any prepetition amounts accrued and unpaid on account of the Employee Compensation and Benefits and to continue the Employee Compensation and Benefits on a postpetition basis in the ordinary course of business and consistent with past practices.

## III. The Debtors Seek a Waiver of the Automatic Stay as It Applies to Workers' Compensation Claims.

53. Section 362(a)(1) of the Bankruptcy Code operates to stay:

> [T]he commencement or continuation, including the issuance or employment of process, of a judicial, administrative, or other action or proceeding against the debtor that was or could have been commenced before the commencement of the case under this title, or to recover a claim against the debtor that arose before the commencement of the case under this title[.]

Section 362 of the Bankruptcy Code, however, permits a debtor or other parties in interest to request a modification or termination of the automatic stay for "cause." 11 U.S.C. § 362(d)(1).

54. The Debtors seek authorization, under section 362(d) of the Bankruptcy Code, to permit Employees to proceed with their workers' compensation claims in the appropriate judicial or administrative forum. The Debtors believe that cause exists to modify the automatic stay because staying the workers' compensation claims could have a detrimental effect on the financial well-being and Employee morale and lead to the departure of certain Employees who are critical at this juncture. Such departures could cause a severe disruption in the Debtors' businesses, which would be to the detriment of all parties in interest.

---

3 Because of the voluminous nature of the orders cited herein, such orders have not been attached to this Motion. Copies of these orders are available upon request of the Debtors' proposed counsel.

**Processing of Checks and Electronic Fund Transfers Should Be Authorized**

55. The Debtors have sufficient funds to pay the amounts described in this Motion by virtue of expected cash flows during the chapter 11 cases and anticipated access to cash collateral. In addition, under the Debtors' existing cash management system, the Debtors can readily identify checks or wire transfer requests as relating to an authorized payment in respect of the Employee Compensation and Benefits obligations. Accordingly, the Debtors believe that checks or wire transfer requests, other than those relating to authorized payments, will not be honored inadvertently. Therefore, the Debtors respectfully request that the Court authorize all applicable financial institutions to receive, process, honor, and pay any and all checks or wire transfer requests in respect of the relief requested in this Motion. Any such financial institution may rely on the representations of such Debtors as to which checks are issued or wire transfers are made (or, as applicable, requested to be issued or made) and authorized to be paid in accordance with this Motion without any duty of further inquiry and without liability for following the Debtors' instructions.

**The Requirements of Bankruptcy Rule 6003(b) Are Satisfied**

56. Bankruptcy Rule 6003 empowers a court to grant relief within the first 21 days after the Petition Date "to the extent that relief is necessary to avoid immediate and irreparable harm." As set forth in this Motion, the Debtors believe an immediate and orderly transition into chapter 11 is critical to the viability of their operations and that any delay in granting the relief requested could hinder the Debtors' operations and cause irreparable harm. Furthermore, the failure to receive the requested relief during the first 21 days of these chapter 11 cases would severely disrupt the Debtors' operations at this critical juncture and imperil the Debtors' restructuring. Accordingly, the Debtors submit that they have satisfied the "immediate and irreparable harm" standard of Bankruptcy Rule 6003 to support granting the relief requested herein.

**Waiver of Bankruptcy Rule 6004(a) and 6004(h)**

57. To successfully implement the foregoing, the Debtors request that the Bankruptcy Court enter an order providing that notice of the relief requested herein satisfies Bankruptcy Rule 6004(a) and that the Debtors have established cause to exclude such relief from the 14-day stay period under Bankruptcy Rule 6004(h).

**Reservation of Rights**

58. Nothing contained in this Motion or any actions taken pursuant to any order granting the relief requested by this Motion is intended or should be construed as (a) an admission as to the validity of any particular claim against the Debtors, (b) a waiver of the Debtors' rights to dispute any particular claim on any grounds, (c) a promise or requirement to pay any particular claim, (d) an implication or admission that any particular claim is of a type specified or defined in this Motion or any order granting the relief requested by this Motion, (e) a request or authorization to assume any agreement, contract, or lease pursuant to section 365 of the Bankruptcy Code, (f) a waiver or limitation of the Debtors' rights under the Bankruptcy Code or any other applicable law, or (g) a concession by the Debtors that any liens (contractual, common law, statutory, or otherwise) satisfied pursuant to this Motion are valid, and the Debtors expressly reserve their rights to contest the extent, validity, or perfection or seek avoidance of all such liens. If the Bankruptcy Court grants the relief sought herein, any payment made pursuant to the Bankruptcy Court's order is not intended and should not be construed as an admission as to the validity of any particular claim or a waiver of the Debtors' rights to subsequently dispute such claim.

**Motion Practice**

59. This Motion includes citations to the applicable rules and statutory authorities upon which the relief requested herein is predicated and a discussion of its application to this Motion. Accordingly, the Debtors submit that this Motion satisfies Local Rule 9013-1(a).

## **Notice**

60. The Debtors will provide notice of this Motion to the following parties and/or their respective counsel, as applicable: (a) the Office of the United States Trustee for the Southern District of New York; (b) the holders of the 50 largest unsecured claims against the Debtors (on a consolidated basis); (c) the agent under the proposed postpetition debtor in possession financing facility; (d) the administrative agents and indenture trustees under the Debtors' prepetition credit agreement and note indentures; (e) Milbank LLP, counsel to an *ad hoc* group of second lien noteholders; (f) Paul, Weiss, Rifkind, Wharton & Garrison LLP, counsel to an *ad hoc* group of first lien term lenders; (g) Shearman & Sterling LLP, counsel to the Midwest noteholders; (h) the Pension Benefit Guaranty Corporation; (i) the United States Attorney's Office for the Southern District of New York; (j) the Internal Revenue Service; (k) the United States Securities and Exchange Commission; (l) the Environmental Protection Agency and all similar state environmental agencies; (m) the attorneys general in the states where the Debtors conducts their business operations; and (n) any party that has requested notice pursuant to Bankruptcy Rule 2002. The Debtors submit that, in light of the nature of the relief requested, no other or further notice need be given.

## **No Prior Request**

61. No prior request for the relief sought in this Motion has been made to this or any other court.

[*Remainder of page intentionally left blank.*]

WHEREFORE, the Debtors respectfully request that the Bankruptcy Court enter the Interim Order and Final Order granting the relief requested herein and such other relief as the Bankruptcy Court deems appropriate under the circumstances.

Dated: February 25, 2019
New York, New York

*/s/ Stephen E. Hessler*

Stephen E. Hessler, P.C.
Marc Kieselstein, P.C.
Cristine Pirro Schwarzman
**KIRKLAND & ELLIS LLP**
**KIRKLAND & ELLIS INTERNATIONAL LLP**
601 Lexington Avenue
New York, New York 10022
Telephone: (212) 446-4800
Facsimile: (212) 446-4900

- and -

James H.M. Sprayregen, P.C.
Ross M. Kwasteniet, P.C. (*pro hac vice* pending)
Brad Weiland (*pro hac vice* pending)
John R. Luze (*pro hac vice* pending)
**KIRKLAND & ELLIS LLP**
**KIRKLAND & ELLIS INTERNATIONAL LLP**
300 North LaSalle Street
Chicago, Illinois 60654
Telephone: (312) 862-2000
Facsimile: (312) 862-2200

*Proposed Counsel to the Debtors and Debtors in Possession*

# Exhibit A

**Proposed Interim Order**

**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**

| | | |
|---|---|---|
| In re: | ) | Chapter 11 |
| WINDSTREAM HOLDINGS, INC., *et al.*,[1] | ) | Case No. 19-22312 (RDD) |
| Debtors. | ) | (Joint Administration Requested) |

**INTERIM ORDER AUTHORIZING THE DEBTORS TO (I) PAY PREPETITION EMPLOYEE WAGES, SALARIES, OTHER COMPENSATION, AND REIMBURSABLE EMPLOYEE EXPENSES AND (II) CONTINUE EMPLOYEE BENEFITS PROGRAMS**

Upon the motion (the "Motion")[2] of the above-captioned debtors and debtors in possession (collectively, the "Debtors") for entry of an interim order (this "Interim Order"), authorizing the Debtors to (a) pay certain prepetition employee wages, salaries, other compensation, and reimbursable employee expenses and (b) continue employee benefits programs in the ordinary course all as more fully set forth in the Motion; and upon the First Day Declaration; and this Court having jurisdiction over this matter pursuant to 28 U.S.C. §§ 157 and 1334 and the *Amended Standing Order of Reference from the United States District Court for the Southern District of New York*, dated February 1, 2012; and that this Court may enter a final order consistent with Article III of the United States Constitution; and this Court having found that venue of this proceeding and the Motion in this district is proper pursuant to 28 U.S.C. §§ 1408 and 1409; and this Court having found that this is a core proceeding pursuant to 28 U.S.C. § 157(b); and this

[1] The last four digits of Debtor Windstream Holdings, Inc.'s tax identification number are 7717. Due to the large number of debtor entities in these chapter 11 cases, for which the Debtors have requested joint administration, a complete list of the debtor entities and the last four digits of their federal tax identification numbers is not provided herein. A complete list of such information may be obtained on the website of the Debtors' proposed claims and noticing agent at http://www.kccllc.net/windstream. The location of the Debtors' service address for purposes of these chapter 11 cases is: 4001 North Rodney Parham Road, Little Rock, Arkansas 72212.

[2] Capitalized terms used but not otherwise defined herein have the meanings ascribed to them in the Motion.

Court having found that the debtor's notice of the Motion and opportunity for a hearing on the Motion were appropriate under the circumstances and no other notice need be provided; and this Court having reviewed the Motion and having heard the statements in support of the relief requested therein at a hearing, if any, before this Court (the "Hearing"); and this Court having determined that the legal and factual bases set forth in the Motion and at the Hearing establish just cause for the relief granted herein; and upon all of the proceedings had before this Court; and after due deliberation and sufficient cause appearing therefor, it is HEREBY ORDERED THAT:

1. The Motion is granted on an interim basis as set forth herein.

2. The final hearing (the "Final Hearing") on the Motion shall be held on _________, 2019, at__:__ _.m., prevailing Eastern Time. Any objections or responses to entry of a final order on the Motion shall be filed on or before 4:00 p.m., prevailing Eastern Time, on _________, 2019, and shall be served on: (a) the Debtors, Windstream Holdings, Inc., 4001 North Rodney Parham Road, Little Rock, Arkansas 72212, Attn.: Kristi M. Moody; (b) proposed counsel to the Debtors, Kirkland & Ellis LLP, 601 Lexington Avenue, New York, New York 10022, Attn.: Stephen E. Hessler, P.C., and Kirkland & Ellis LLP, 300 North LaSalle Street, Chicago, Illinois 60654, Attn.: Ross M. Kwasteniet, P.C., Brad Weiland, and John R. Luze; (c) counsel to any statutory committee appointed in these cases; and (d) the Office of The United States Trustee, U.S. Federal Office Building, 201 Varick Street, Suite 1006, New York, New York 10014, Attn.: Paul K. Schwartzberg and Serene Nakano. In the event no objections to entry of a final order on the Motion are timely received, this Court may enter such final order without need for the Final Hearing.

3. The Debtors are authorized in their sole discretion, to continue to provide, and to pay any claims or obligations on account of, the Employee Compensation and Benefits in the

ordinary course and in accordance with the Debtors' prepetition policies and prepetition practices, irrespective of whether such obligations arose prepetition or postpetition; *provided that*, for the avoidance of doubt, the Debtors will not seek to pay any outstanding prepetition or postpetition claims with respect to the Reimbursable Expenses in advance of the date they come due.

4. The Debtors shall not make any non-ordinary course bonus, incentive, or severance payments to any Insiders (as such term is defined in section 101(31) of the Bankruptcy Code) without further order of this Court.

5. Pursuant to section 362(d) of the Bankruptcy Code, Employees are authorized to proceed with their claims under the Workers' Compensation Program in the appropriate judicial or administrative forum and the Debtors are authorized to continue the Workers' Compensation Program and pay all prepetition amounts relating thereto in the ordinary course. This modification of the automatic stay pertains solely to claims under the Workers' Compensation Program.

6. The Debtors are authorized to forward any unpaid amounts on account of deductions or payroll taxes to the appropriate third-party recipients or taxing authorities in accordance with the Debtors' prepetition policies and practices.

7. The Debtors are authorized to pay costs and expenses incidental to payment of the Employee Compensation and Benefits obligations, including all administrative and processing costs and payments to outside professionals.

8. Pending entry of the Final Order, the Debtors shall not pay any amounts on account of the Wage Obligations in excess of the statutory cap of $12,850 set forth in sections 507(a)(4) and 507(a)(5) of the Bankruptcy Code.

9. The Debtors shall provide notice to the Office of the United States Trustee for the Southern District of New York, as well as to any official committee of unsecured creditors

appointed in these chapter 11 cases, in the event that any Employee receives payment on account of Reimbursable Expenses in excess of $10,000.00.

10. Pending entry of the Final Order, the Debtors shall not make any payments on account of the Severance Obligations accrued prior to the Petition Date in excess of the statutory cap of $12,850 set forth in sections 507(a)(4) and 507(a)(5) of the Bankruptcy Code. Additionally, the Debtors shall not make any payments on account of any Severance Obligations arising after the Petition Date in violation of section 503(c) of the Bankruptcy Code.

11. Nothing contained herein is intended or should be construed to create an administrative priority claim on account of the Employee Compensation and Benefits obligations.

12. The banks and financial institutions on which checks were drawn or electronic payment requests made in payment of the prepetition obligations approved herein are authorized and directed to receive, process, honor, and pay all such checks and electronic payment requests when presented for payment, and all such banks and financial institutions are authorized to rely on the Debtors' designation of any particular check or electronic payment request as approved by this Interim Order without any duty to inquire otherwise and without liability for following the Debtors' instructions.

13. Notwithstanding the relief granted in this Interim Order and any actions taken pursuant to such relief, nothing in this Interim Order shall be deemed: (a) an admission as to the validity of any particular claim against the Debtors; (b) a waiver of the Debtors' rights to dispute any particular claim on any grounds; (c) a promise or requirement to pay any particular claim; (d) an implication or admission that any particular claim is of a type specified or defined in this Interim Order or the Motion; (e) a request or authorization to assume any agreement, contract, or lease pursuant to section 365 of the Bankruptcy Code; (f) a waiver or limitation of the Debtors'

rights under the Bankruptcy Code or any other applicable law; or (g) a concession by the Debtors that any liens (contractual, common law, statutory, or otherwise) satisfied pursuant to the Motion are valid, and the Debtors expressly reserve their rights to contest the extent, validity, or perfection or seek avoidance of all such liens. Any payment made pursuant to this Order is not intended and should not be construed as an admission as the validity of any particular claim or a waiver of the Debtors' rights to subsequently dispute such claim.

14. Notwithstanding anything in the Motion or this Interim Order to the contrary, any payment made or action taken by any of the Debtors pursuant to the authority granted herein, as well as the exercise of any and all other rights and authorizations granted or approved hereunder, shall be subject in all respects to, as applicable: (i) the orders approving the Debtors' use of cash collateral and/or post-petition debtor-in-possession financing facilities (collectively, the "DIP Orders"); (ii) the other documentation governing the Debtors' use of cash collateral and postpetition financing facilities; and (iii) the Budget (as defined in the DIP Orders).

15. To the extent there is any inconsistency between the terms of any of the DIP Orders and this Interim Order, the terms of the DIP Order (or DIP Orders, as applicable) shall control.

16. The Debtors are authorized to issue postpetition checks, or to effect postpetition fund transfer requests, in replacement of any checks or fund transfer requests that are dishonored as a consequence of these chapter 11 cases with respect to prepetition amounts owed in connection with the relief granted herein.

17. The contents of the Motion satisfy the requirements of Bankruptcy Rule 6003(b).

18. Notice of the Motion as provided therein shall be deemed good and sufficient notice of such Motion and the requirements of Bankruptcy Rule 6004(a) and the Local Rules are satisfied by such notice.

19. Notwithstanding Bankruptcy Rule 6004(h), the terms and conditions of this Interim Order are immediately effective and enforceable upon its entry.

20. The Debtors are authorized to take all actions necessary to effectuate the relief granted in this Interim Order in accordance with the Motion.

21. This Court retains exclusive jurisdiction with respect to all matters arising from or related to the implementation, interpretation, and enforcement of this Interim Order.

White Plains, New York
Dated: _____________, 2019

_______________________________________
THE HONORABLE ROBERT D. DRAIN
UNITED STATES BANKRUPTCY JUDGE

# **Exhibit B**

## **Proposed Final Order**

**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**

| | | |
|---|---|---|
| In re: | ) | Chapter 11 |
| WINDSTREAM HOLDINGS, INC., *et al.*,[1] | ) | Case No. 19-22312 (RDD) |
| Debtors. | ) | (Joint Administration Requested) |

**FINAL ORDER AUTHORIZING THE DEBTORS TO (I) PAY PREPETITION EMPLOYEE WAGES, SALARIES, OTHER COMPENSATION, AND REIMBURSABLE EMPLOYEE EXPENSES AND (II) CONTINUE EMPLOYEE BENEFITS PROGRAMS**

Upon the motion (the "Motion")[2] of the above-captioned debtors and debtors in possession (collectively, the "Debtors") for entry of a final order (this "Final Order"), authorizing the Debtors to (a) pay certain prepetition employee wages, salaries, other compensation, and reimbursable employee expenses and (b) continue employee benefits programs in the ordinary course, all as more fully set forth in the Motion; and upon the First Day Declaration; and this Court having jurisdiction over this matter pursuant to 28 U.S.C. §§ 157 and 1334 and the *Amended Standing Order of Reference from the United States District Court for the Southern District of New York*, dated February 1, 2012; and that this Court may enter a final order consistent with Article III of the United States Constitution; and this Court having found that venue of this proceeding and the Motion in this district is proper pursuant to 28 U.S.C. §§ 1408 and 1409; and this Court having found that this is a core proceeding pursuant to 28 U.S.C. § 157(b); and this Court having found

[1] The last four digits of Debtor Windstream Holdings, Inc.'s tax identification number are 7717. Due to the large number of debtor entities in these chapter 11 cases, for which the Debtors have requested joint administration, a complete list of the debtor entities and the last four digits of their federal tax identification numbers is not provided herein. A complete list of such information may be obtained on the website of the Debtors' proposed claims and noticing agent at http://www.kccllc.net/windstream. The location of the Debtors' service address for purposes of these chapter 11 cases is: 4001 North Rodney Parham Road, Little Rock, Arkansas 72212.

[2] Capitalized terms used but not otherwise defined herein have the meanings ascribed to them in the Motion.

that the debtor's notice of the Motion and opportunity for a hearing on the Motion were appropriate under the circumstances and no other notice need be provided; and this Court having reviewed the Motion and having heard the statements in support of the relief requested therein at a hearing, if any, before this Court (the "Hearing"); and this Court having determined that the legal and factual bases set forth in the Motion and at the Hearing establish just cause for the relief granted herein; and upon all of the proceedings had before this Court; and after due deliberation and sufficient cause appearing therefor, it is HEREBY ORDERED THAT:

1. The Motion is granted as set forth herein.

2. The Debtors are authorized in their sole discretion, to continue to provide, and to pay any claims or obligations on account of, the Employee Compensation and Benefits in the ordinary course and in accordance with the Debtors' prepetition policies and prepetition practices, irrespective of whether such obligations arose prepetition or postpetition.

3. The Debtors shall not make any non-ordinary course bonus, incentive, or severance payments to any Insiders (as such term is defined in section 101(31) of the Bankruptcy Code) without further order of this Court.

4. Pursuant to section 362(d) of the Bankruptcy Code, Employees are authorized to proceed with their claims under the Workers' Compensation Program in the appropriate judicial or administrative forum and the Debtors are authorized to continue the Workers' Compensation Program and pay all prepetition amounts relating thereto in the ordinary course. This modification of the automatic stay pertains solely to claims under the Workers' Compensation Program.

5. The Debtors are authorized to forward any unpaid amounts on account of deductions or payroll taxes to the appropriate third-party recipients or taxing authorities in accordance with the Debtors' prepetition policies and practices.

6. The Debtors are authorized to pay costs and expenses incidental to payment of the Employee Compensation and Benefits obligations, including all administrative and processing costs and payments to outside professionals.

7. The Debtors shall provide notice to the Office of the United States Trustee for the Southern District of New York, as well as to any official committee of unsecured creditors appointed in these chapter 11 cases, in the event that any Employee receives payment on account of Reimbursable Expenses in excess of $10,000.00.

8. The Debtors shall not make any payments on account of any Severance Obligations arising after the Petition Date in violation of section 503(c) of the Bankruptcy Code.

9. Nothing contained herein is intended or should be construed to create an administrative priority claim on account of the Employee Compensation and Benefits obligations.

10. The banks and financial institutions on which checks were drawn or electronic payment requests made in payment of the prepetition obligations approved herein are authorized and directed to receive, process, honor, and pay all such checks and electronic payment requests when presented for payment, and all such banks and financial institutions are authorized to rely on the Debtors' designation of any particular check or electronic payment request as approved by this Final Order without any duty to inquire otherwise and without liability for following the Debtors' instructions.

11. Notwithstanding the relief granted in this Final Order and any actions taken pursuant to such relief, nothing in this Final Order shall be deemed: (a) an admission as to the validity of any particular claim against the Debtors; (b) a waiver of the Debtors' rights to dispute any particular claim on any grounds; (c) a promise or requirement to pay any particular claim; (d) an implication or admission that any particular claim is of a type specified or defined in this

Final Order or the Motion; (e) a request or authorization to assume any agreement, contract, or lease pursuant to section 365 of the Bankruptcy Code; (f) a waiver or limitation of the Debtors' rights under the Bankruptcy Code or any other applicable law; or (g) a concession by the Debtors that any liens (contractual, common law, statutory, or otherwise) satisfied pursuant to the Motion are valid, and the Debtors expressly reserve their rights to contest the extent, validity, or perfection or seek avoidance of all such liens. Any payment made pursuant to this Order is not intended and should not be construed as an admission as the validity of any particular claim or a waiver of the Debtors' rights to subsequently dispute such claim.

12. The Debtors are authorized to issue postpetition checks, or to effect postpetition fund transfer requests, in replacement of any checks or fund transfer requests that are dishonored as a consequence of these chapter 11 cases with respect to prepetition amounts owed in connection with the relief granted herein.

13. Notwithstanding anything in the Motion, the Interim Order, or this Final Order to the contrary, any payment made or action taken by any of the Debtors pursuant to the authority granted herein, as well as the exercise of any and all other rights and authorizations granted or approved hereunder, shall be subject in all respects to, as applicable: (i) the orders approving the Debtors' use of cash collateral and/or post-petition debtor-in-possession financing facilities (collectively, the "DIP Orders"); (ii) the other documentation governing the Debtors' use of cash collateral and postpetition financing facilities; and (iii) the Budget (as defined in the DIP Orders).

14. To the extent there is any inconsistency between the terms of any of the DIP Orders and this Final Order, the terms of the DIP Order (or DIP Orders, as applicable) shall control.

15. The contents of the Motion satisfy the requirements of Bankruptcy Rule 6003(b).

16. Notice of the Motion as provided therein shall be deemed good and sufficient notice of such Motion and the requirements of Bankruptcy Rule 6004(a) and the Local Rules are satisfied by such notice.

17. Notwithstanding Bankruptcy Rule 6004(h), the terms and conditions of this Final Order are immediately effective and enforceable upon its entry.

18. The Debtors are authorized to take all actions necessary to effectuate the relief granted in this Final Order in accordance with the Motion.

19. This Court retains exclusive jurisdiction with respect to all matters arising from or related to the implementation, interpretation, and enforcement of this Final Order.

New York, New York
Dated: __________, 2019

____________________________________
THE HONORABLE ROBERT D. DRAIN
UNITED STATES BANKRUPTCY JUDGE