Hearing Date and Time: April 16, 2019 10:00 a.m.
Objection Deadline: April 9, 2019 at 4:00 p.m.

Marilyn Cowhey Macron
(Marilyn@MarilynMacron.com)
Marilyn Macron, P.C.
211 Beach 134th Street, First Floor
Belle Harbor, NY 11694
Telephone: 718-404-7199
Facsimile: 718-945-7455

*Counsel for U.S. TelePacific Corp.*
*(doing business as TPx Communications)*

**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**
-------------------------------------------------------X
In re:

**WINDSTREAM HOLDINGS, INC., et al,**

                **Debtor(s).**

-------------------------------------------------------X

**Chapter 11**

**Case No. 19-22312 (RDD)**

**Jointly Administered**

**OBJECTION OF U.S. TELEPACIFIC CORP. TO DEBTORS' MOTION FOR ENTRY OF AN ORDER (I) PROHIBITING UTILITY PROVIDERS FROM ALTERING, REFUSING, OR DISCONTINUING UTILITY SERVICES, (II) DETERMINING ADEQUATE ASSURANCE OF PAYMENT FOR FUTURE UTILITY SERVICES, AND (III) ESTABLISHING PROCEDURES FOR DETERMINING ADEQUATE ASSURANCE OF PAYMENT**

**Preliminary Statement**

1.    U.S. TelePacific Corp. (doing business as TPx Communications) is the nation's premier managed services provider and a creditor of the Debtors. U.S. TelePacific Corp. opposes ***Debtors' Motion For Entry Of An Order (I) Prohibiting Utility Providers From Altering, Refusing, Or Discontinuing Utility Services, (II) Determining Adequate Assurance Of Payment For Future Utility Services, And (III) Establishing Procedures For Determining Adequate Assurance Of Payment*** [Docket No. 7] (the "Utility Motion") and joins in the objections raised by other utilities [Docket No. 229]. U.S. TelePacific Corp. and the Debtors

1

have engaged in negotiations and attempted to reach an agreement that provides adequate assurance of payment for utility service pursuant to 11 U.S.C. §366(c)(2).  However, if the parties are unable to reach an agreement prior to the hearing on the Utility Motion, U.S. TelePacific Corp. requests that the Utility Motion be denied for the reasons stated below and for the reasons raised by the other utilities.  The Debtor have not submitted sufficient admissible evidence to support granting the relief sought in the Utility Motion.

## BACKGROUND

**a.  U.S. TelePacific Corp. is a Utility That Provides Telecommunications to the Debtors**

2.      U.S. TelePacific Corp. is the nation's premier managed services provider. U.S. TelePacific Corp. and its sister corporations deliver unified communications, managed IT, and network connectivity to approximately 55,000 customer locations across the United States. U.S. TelePacific Corp. provides utility service (unified communications, managed IT, and network connectivity) to the debtors under 11 separate account numbers.

3.      Prior to the hearing on the Utility Motion, U.S. TelePacific Corp. will file a proof of claim. That proof of claim will serve as "prima facie evidence of the validity and amount of" U.S. TelePacific Corp.'s claim. Federal Rule of Bankruptcy Procedure 3001(f) ("Evidentiary Effect. A proof of claim executed and filed in accordance with these rules shall constitute prima facie evidence of the validity and amount of the claim.").  The proof of claim will confirm that U.S. TelePacific Corp.'s pre-bankruptcy claim is $580,321.79. (There is no pre-petition security deposit.)

4.      Post-bankruptcy, U.S. TelePacific Corp. has continued to provide (at the debtors' request) unified communications, managed IT, and network connectivity services to the debtors in possession. As of April 1, 2019, U.S. TelePacific Corp.'s post-petition administrative claim was approximately $284,237.18.  Here are the details of the claim as of April 1, 2019:

2

| Account | Billed From | Bill Company | Cycle | Last Paid Dt | Last Paid Amt | Balances Owed by Aging | | | | Open Balances | Proof of Claim (Pre-Petition) | Post-Petition Amounts Owed |
|---|---|---|---|---|---|---|---|---|---|---|---|---|
| | | | | | | Current | 31-60 | 61-90 | 91-120 | | | |
| 158491 | FX | Windstream (Earthlink) | 31 | 2/20/2019 | 53,501.50 | 53,625.90 | 8,881.35 | - | - | $ 62,507.25 | $ 98,630.19 | $ (36,122.94) |
| 158840 | FX | Windstream (Earthlink) | 31 | 2/20/2019 | 30,702.09 | 33,512.26 | 32,317.80 | 31,061.47 | 452.00 | $ 97,343.53 | $ 57,257.21 | $ 40,086.32 |
| 158841 | FX | Windstream (Earthlink) | 31 | 2/20/2019 | 5,165.67 | 5,020.23 | 5,010.94 | 4,651.06 | 4,665.00 | $ 19,347.23 | $ 13,332.92 | $ 6,014.31 |
| 404880 | CMS | WINDSTREAM | 8 | 2/11/2019 | 72,320.06 | 67,726.77 | 73,768.83 | 66,220.70 | 62.72 | $ 207,779.02 | $ 106,886.01 | $ 100,893.01 |
| 407432 | CMS | WINDSTREAM (EARTHLINK) | 8 | 1/15/2019 | 99,648.42 | 93,444.85 | 94,285.27 | 95,898.47 | 92,643.99 | $ 376,272.58 | $ 242,265.29 | $ 134,007.29 |
| 407434 | CMS | WINDSTREAM (EARTHLINK) | 15 | 1/15/2019 | 10,395.35 | 9,675.59 | 9,902.00 | 10,190.00 | 9,686.40 | $ 39,453.99 | $ 23,255.90 | $ 16,198.09 |
| 407443 | CMS | WINDSTREAM | 15 | 2/11/2019 | 1,250.00 | (2,547.73) | 1,125.00 | - | - | $ (1,422.73) | $ 375.00 | $ (1,797.73) |
| 407446 | CMS | MASS COMMUNICATIONS | 8 | 2/21/2019 | 6,662.74 | 7,063.26 | 7,141.79 | 6,767.10 | | $ 20,972.15 | $ 11,949.34 | $ 9,022.81 |
| 407866 | CMS | WINDSTREAM (EARTHLINK) | 1 | 1/15/2019 | 15,477.68 | 7,644.79 | 7,559.00 | 7,559.00 | - | $ 22,762.79 | $ 16,120.57 | $ 6,642.22 |
| 408044 | CMS | WINDSTREAM | 8 | 2/11/2019 | 6,470.00 | 6,311.82 | 6,336.27 | 5,945.24 | 202.64 | $ 18,795.97 | $ 9,630.30 | $ 9,165.67 |
| 408193 | CMS | MC/MASS COMMUNICATIONS | 8 | 2/21/2019 | 234.46 | 271.15 | 476.04 | - | - | $ 747.19 | $ 619.06 | $ 128.13 |
| | | | | Totals | | 281,748.89 | 246,804.29 | 228,293.04 | 107,712.75 | $ 864,558.97 | $ 580,321.79 | $ 284,237.18 |

5.      The average monthly billing on the 11 accounts is approximately $279,000.00.

b. **The Circumstances Surrounding the Debtors' Filing**

6.      As the Court is well aware, on February 15, 2019, a substantial judgment was entered against the Debtors in favor of Aurelius. Thomas Declaration, p. 5, ¶10.  Windstream's management never planned for an unfavorable judgment in favor of Aurelius; so, the debtors did not reserve funds to provide for this judgment. As a result of this failure in planning, the Aurelius judgment resulted in an immediate liquidity crisis for the Debtors. Thomas Declaration, p. 6-7, ¶¶10, 13.

7.      The Debtors have admitted that they cannot survive in chapter 11 without borrowing heavily. Thomas Declaration, pp. 23-24, ¶47. Among other expenses, the debtors spend $60,000,000.00 a year on utilities. Thomas Declaration, p. 51 [internal page 20 to Evidentiary Support for First Day Motions] , ¶48 ("$5,000,000.00 each month on account of Utility Services, based on a historical average"). At the present time, they have no plan of reorganization "in prospect."  Thomas Declaration, p. 7, ¶15 ("Windstream intends to engage with all stakeholders postpetition and use the chapter 11 process as to build consensus around a value-maximizing result that will inure to the benefit of stakeholders enterprise wide.").  The Debtors have no idea how long the chapter 11 will take. Thomas Declaration, p. 24, ¶48 ("building consensus takes time, especially under these circumstances").

8.      Debtors and U.S. TelePacific Corp. are in similar businesses. Thomas Declaration, p. 9-10, ¶¶19-21. But U.S. TelePacific Corp. is not a critical vendor for the debtors. Thomas Declaration, p. 45, ¶33.  Debtors need their utilities to provide service on credit to the debtors or it "will jeopardize ... reorganization efforts." Thomas Declaration, p. 52, ¶49.

9.      In the Utility Motion, the Windstream debtors have proposed a "deposit" of sorts. The debtors will put $2,500,000.00 (the "Utilities Fund") (two weeks of estimated utility payments) into the debtors' own bank account. The debtors will hold the funds "for the benefit of the Utility Providers." Utility Motion, ¶12.

## OBJECTIONS

A.      **The Debtors' Request Does Not Comply With 11 U.S.C. §366**

10.     With the 2005 amendments to the Bankruptcy Code (the Bankruptcy Abuse Prevention and Consumer Protection Act), Congress carefully balanced the rights of utilities (like U.S. TelePacific Corp.) and its customers. 11 U.S.C. §366(c)(2) states in relevant part that with respect to a case filed under chapter 11, a utility ... may alter, refuse, or discontinue utility service to the debtors, if during the 30-day period beginning on the date of the filing of the petition, the utility does not receive from the debtor ... adequate assurance of payment for utility service that is satisfactory to the utility. In Section 366, Congress carefully defined "assurance of payment as (i) a cash deposit; (ii) a letter of credit; (iii) a certificate of deposit; (iv) a surety bond; (v) a prepayment of utility consumption; or (vi) another form of security that is mutually agreed on between the utility and the debtor.   or the trustee. ... For purposes of this subsection an administrative expense priority shall not constitute an assurance of payment.").

11.     On the one hand, U.S. TelePacific Corp. is initially required to continue to provide postpetition service to new chapter 11 debtors. 11 U.S.C. §366(a) ("Except as provided in subsections (b) and (c) of this section, a utility [U.S. TelePacific Corp.] may not alter, refuse, or discontinue service to, or discriminate against, the trustee or the debtor solely on the basis of the commencement of a case under this title or that a debt owed by the debtor to such utility for service rendered before the order for relief was not paid when due."). As the *quid pro quo* for requiring U.S. TelePacific Corp. to provide postpetition utility service to the Windstream debtors, the debtors are required to provide adequate assurance that U.S. TelePacific Corp. will be paid. See, 11 U.S.C. §366(c)(2).

12.     This is always risky business for the utility. After all, the utility's customer just filed a bankruptcy petition. The Windstream bankruptcies are no different. This is a massive bankruptcy, with 205 related debtors. A complete list was prepared and posted by Windstream claims' agent at: http://www.kccllc.net/windstream/document/8851800190220000000000002.

4

13. U.S. TelePacific Corp. objects to the adequate assurance proposed by the Debtors as wholly insufficient. The proposed Utilities Fund does not qualify as a "cash deposit" because the $2,500,000.00 is not being paid to the utilities, such as U.S. TelePacific Corp. 11 U.S.C. §366(c)(1)(A) (referring to "cash deposit"). There is no change of title or possession in the deposit account. The debtors are not proposing to pay a separate deposit to U.S. TelePacific Corp.

14. The $2,500,000.00 offer is not satisfactory to U.S. TelePacific Corp. As other objecting utilities have said [Docket #229, pp. 4-5]:

> With respect to the amount, the Debtors do not describe the calculations upon which the $2,500,000 amount was derived, or do they explain what 'approximately one half of the Average Monthly Utility Expense' means. Moreover, nowhere in the Motion do the Debtors identify what amount they have placed in the Adequate Assurance Account for each of the utilities so that the Utilities can review the Debtors' proposed number to confirm that the amount is correct. Furthermore, the Debtors do not explain why or how a two-week amount can constitute adequate assurance of payment when the Debtors know that they receive monthly bills from the Utilities and are provided generous payment terms of up to a month after an invoice is issued to pay the foregoing charges. Accordingly, the Court should deny the Motion as to the Utilities because the Debtors have failed to meet their burden as to why this Court should modify the amount of adequate assurance of payment requested by the Utilities.

15. The Court should also find that the Utility Motion is not supported by adequate evidence. The only evidence supporting the debtors' Utility Motion is found in the declaration of Tony Thomas ("Thomas Declaration"), Docket No. 27. Also, debtors have proposed no formalities regarding the creation of a security interest in the Utilities Fund. There is nothing to guide the debtors, utilities, debtor in possession lenders, or third parties on priority disputes to the Utilities fund.

16. The debtors' proposal does not address the risk of possible disgorgement, should the Windstream bankruptcies fail and become administratively insolvent. The proposal forces U.S. TelePacific Corp. to incur substantial resources and legal fees to watch the bankruptcy cases

and closely monitor the invoices. There is no one in charge to address questions regarding slow payments and delays on payment of the postpetition invoices. This is the not the balancing act crafted by Congress in 11 U.S.C. §366.

B. **The Court Should Direct the Debtors to Provide U.S. TelePacific Corp. With No Less than Two Month Security Deposit**

17. U.S. TelePacific Corp. requests that the Court direct the Debtors to provide it with a two month security deposit. A fair and adequate two-month security deposit for U.S. TelePacific Corp. would be $558,000.00 (two times the average monthly billing of $279,000.00). Debtors should pay the security deposit ($558,000.00) directly to U.S. TelePacific Corp.

18. Regardless of the outcome of the Utility Motion, Debtors must pay all postpetition charges in full when due. If the Debtors fail to pay any postpetition invoice, U.S. TelePacific Corp. will terminate service under its contract terms without further court intervention. *In re Jones*, 369 B.R. 745, 749 (Bankr. App. 1st Cir. 2007) ("... failure to make postpetition payments ... allows for termination without requesting permission from the bankruptcy court ... courts have routinely allowed utilities to terminate service for post-petition delinquencies without obtaining relief from stay."). U.S. TelePacific Corp. requests that the Court permit it to apply the $558,000.00 security deposit to unpaid invoices, but without further order of the court, at the time of termination of service. If there is any money left over after U.S. TelePacific Corp. applies the $558,000.00 security deposit to unpaid postpetition invoices, U.S. TelePacific Corp. will return the balance of the security deposit to those Debtor(s) that paid that security deposit. If the Debtors timely pay all postpetition charges, U.S. TelePacific Corp. will return the full security deposit on the effective date of confirmation of Debtors' chapter 11 plan. If the Debtors reject the executory contract with U.S. TelePacific Corp., then U.S. TelePacific Corp. will return the balance of the security deposit after termination of service, a final accounting, and all postpetition invoices are satisfied in full. U.S. TelePacific Corp. submits that these procedures are reasonable under the circumstances of these cases.

## The Debtors' Have Failed to Meet Their Burden of Proof and the Utility Motion Should be Denied under the Totality of Circumstances

19. The Court should find that the Debtors have failed to meet their burden of proof, and that the Utility Motion should be denied under all of the circumstances of these cases. The motion is inadequately supported by evidence and information sufficient to support the relief requested. The Debtors bear the burden of proof to support their motion. Here, the Debtors' evidence is the testimony of Mr. Thomas. Even if Mr. Thomas' testimony [Docket No. 27, pp. 51-52, ¶¶ 48-49] was admissible, it does not support the requested relief. It simply establishes that the Debtors have a liquidity crisis and cannot operate without postpetition credit from the utility companies.

20. While some of Mr. Thomas' testimony is based on "personal knowledge," other parts of his testimony are based on hearsay ("discussions with other [unidentified] members of Windstream's management team"), a review of unidentified documents ("my review of relevant documents and information concerning Windstream operations, financial affairs, and restructuring initiatives"), and "opinions." Docket No. 27, p. 2, ¶3. Very little weight should be given to this portion of Mr. Thomas's statements.

21. The Court has limited review of the utility process. It can "order modification of the amount of an assurance of payment under paragraph (2)." 11 U.S.C. §366(c)(3)(A). In these cases, this court should examine the totality of the admissible facts and circumstances, when considering a question of "adequate assurance" before it exercises that review. Based on the facts presented by the Debtors, the Utility Motion should be denied.

WHEREFORE, U.S. TelePacific Corp. respectfully requests that the Court deny the

Utility Motion as proposed and grant such other and further relief as it deemed just and equitable.

Dated: April 9, 2019
Belle Harbor, NY

                                              Marilyn Macron P.C.

                                              By: /s/ Marilyn Cowhey Macron
                                              Marilyn Cowhey Macron (MM-8311)

                                              211 Beach 134th Street, 1st Floor
                                              Belle Harbor, NY 11694
                                              Tel. 718-404-7199
                                              Fax. 718-945-7455
                                              marilyn@marilynmacron.com
                                              Counsel for U.S. TelePacific Corp.