Dennis F. Dunne, Esq.
Samuel A. Khalil, Esq.
Andrew M. Leblanc, Esq.
MILBANK LLP
55 Hudson Yards
New York, New York 10001
Telephone: (212) 530-5000
Facsimile:  (212) 530-5219

*Counsel for the Ad Hoc Committee*
*of Second Lien Noteholders*

**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**

------------------------------------------------------------------ x
                                                                   :
In re:                                                             :    Chapter 11
                                                                   :
WINDSTREAM HOLDINGS, INC., *et al.*,[1]                            :    Case No. 19-22312 (RDD)
                                                                   :
       Debtors.                                                    :    (Jointly Administered)
                                                                   :
------------------------------------------------------------------ x

**LIMITED OBJECTION OF THE AD HOC COMMITTEE OF**
**SECOND LIEN NOTEHOLDERS TO THE DEBTORS' SECOND MOTION TO**
**EXTEND THE DEBTORS' EXCLUSIVE PERIODS TO FILE**
**A CHAPTER 11 PLAN AND SOLICIT ACCEPTANCES THEREOF**

The Ad Hoc Committee of Second Lien Noteholders (the "Ad Hoc Committee")[2] hereby submits this limited objection to the *Debtors' Second Motion to Extend the Debtors' Exclusive Periods to File a Chapter 11 Plan and Solicit Acceptances Thereof Pursuant to Section 1121 of the Bankruptcy Code* [ECF No. 1281] (the "Motion").[3]

---

[1] The last four digits of Windstream Holdings, Inc.'s tax identification number are 7717.  Due to the large number of debtors in these chapter 11 cases (the "Debtors"), a complete list of the Debtors and the last four digits of their federal tax identification numbers is not provided herein.  Such complete list may be obtained on the website of the Debtors' claims and noticing agent at http://www.kccllc.net/windstream.  The Debtors' service address is: 4001 North Rodney Parham Road, Little Rock, Arkansas 72212.

[2] The Ad Hoc Committee consists of certain beneficial holders and/or investment managers or advisors to beneficial holders of, among other claims and interests, the 10.50% Senior Second Lien Notes due 2024 and the 9.00% Senior Second Lien Notes due 2025 issued by Windstream Services, LLC and Windstream Finance Corp.

[3] Capitalized terms used but not defined herein have the meaning ascribed to them in the Motion.

**LIMITED OBJECTION**

1.    The Ad Hoc Committee does not oppose a second extension of the Debtors' Exclusivity Periods, but it does object to the length of the requested extension. The 247-day extension requested by the Debtors would be staggering under any circumstances. However, given the 180-day extension of the Exclusivity Periods that the Debtors have already received, this additional extension would extend the Debtors' Exclusivity Periods to the maximum statutory limit, which would constitute a marked departure from the boundaries of appropriate and customary relief.

2.    Section 1121 of the Bankruptcy Code limits the amount of time in which a debtor has the exclusive right to file a plan of reorganization and solicit acceptances thereof to 120 and 180 days, respectively. 11 U.S.C. § 1121(b) and (c). These initial periods may be extended only upon a showing of "cause," and it is the debtor's burden to show the requisite "cause." 11 U.S.C. § 1121(d); *In re GMG Capital Partners III, L.P.*, 503 B.R. 596, 600 (Bankr. S.D.N.Y. 2014).

3.    Notably, even if a debtor demonstrates "cause" justifying *some* extension, a bankruptcy court retains discretion to determine the appropriate length of such an extension. *See, e.g.*, *Official Comm. of Unsecured Creditors of Mirant Ams. Generation, L.L.C. v. Mirant Corp. (In re Mirant Corp.)*, 2004 U.S. Dist. LEXIS 19796, at *9 (N.D. Tex. Sept. 30, 2004) (affirming order where "[t]he bankruptcy court did not grant the extension sought by debtors" and "[i]nstead . . . granted an extension that it concluded would be meaningful in that debtors would be pressed, but not unduly so, to submit a proposed plan").

4.    The length of the extension requested by the Debtors is highly unusual, particularly given that it is opposed by the Debtors' key creditor constituencies. The Debtors assert that similar relief has been granted in large chapter 11 cases in this District. *See* Motion ¶ 21. But the cases

cited in the Motion to illustrate this assertion uniformly featured extension requests that were ultimately unopposed, and all but one case involved the debtors' ***third, fourth, or even eighth*** extension of exclusivity. Even when the requisite cause is successfully demonstrated, the standard for the ***second*** extension of exclusivity in the recent "mega" cases in this District is approximately 90 days or less.[4]

5. While the Debtors contend that the requested extension is justified because the litigation against Uniti is a "gating item" that must be resolved before a plan of reorganization may be formulated, that is not true. The parties in interest do not have to await the conclusion of the Uniti trial (scheduled to commence in March) to begin negotiations with respect to a plan. Indeed, the parties could negotiate and file a plan predicated on, among other things, the rejection of the Uniti master lease or the sale of the Debtors' businesses, neither of which require a resolution of such litigation.

6. Given how these cases have unfolded thus far, a continuation of the *status quo* will harm the value of the Debtors' estates. The Debtors cannot credibly argue that the drastic extension of exclusivity they are seeking—which, if granted, would span nearly six months after the end of the Uniti trial—is warranted. Such an extension would force the Debtors' creditors to sit idly by for the next eight months, while allowing the Debtors to incur ever-expanding administrative costs and exert undue leverage over their stakeholders by maintaining exclusive control over the plan process. That would be wholly inappropriate.

---

[4] *See In re Trident Holding Co.*, No. 19-10384 (SHL) (Bankr. S.D.N.Y. Aug. 26, 2019) [ECF No. 822] (second exclusivity extension of 90 days); *In re Sizmek, Inc.*, No. 19-10971 (SMB) (Bankr. S.D.N.Y. Aug. 21, 2019) [ECF No. 400] (56 days); *In re Ditech Holding Corp.*, No. 19-10412 (JLG) (Bankr. S.D.N.Y. Aug. 14, 2019) [ECF No. 1156] (61 days); *In re Miami Metals I, Inc.*, No. 18-13359 (SHL) (Bankr. S.D.N.Y. May 31, 2019) [ECF No. 1141] (60 days); *In re Sears Holdings Corp.*, No. 18-23538 (RDD) (Bankr. S.D.N.Y. May 10, 2019) [ECF No. 3800] (58 days); *In re Aralez Pharm. US Inc.*, No. 18-12425 (MG) (Bankr. S.D.N.Y. Feb. 14, 2019) [ECF No. 502] (61 days); *In re Tops Holding II Corp.*, No. 18-22279 (RDD) (Bankr. S.D.N.Y. Oct. 24, 2018) [ECF No. 715] (92 days); *In re Nine West Holdings, Inc.*, No. 18-10947 (SCC) (Bankr. S.D.N.Y. Sept. 14, 2018) [ECF No. 653] (45 days); *In re BICOM NY, LLC*, No. 17-11906 (MEW) (Bankr. S.D.N.Y. Feb. 22, 2018) [ECF No. 457] (90 days).

7.  In contrast, a shorter extension of 100 days—*i.e.*, through March 31st for the Debtors' Filing Exclusivity Period—would (i) provide a nearer-term checkpoint to ensure that meaningful progress is being made, (ii) better serve the interests of the Debtors' estates by incentivizing all parties to come to the negotiation table and work together constructively, and (iii) better promote the Debtors' stated goal of moving these cases toward a "timely and efficient emergence from chapter 11 . . . ." Motion ¶ 3. Such a shorter, more appropriate, extension would not prejudice the Debtors in any way since they would have the right to seek further extensions upon demonstrating to the Court why they may be warranted.

8.  At bottom, exclusivity is a valuable right, afforded by Congress to debtors-in-possession, and the Court, as well as the parties in interest, should be assured that it is being utilized properly to advance the Debtors' restructuring at the swiftest pace that is reasonable under the circumstances. The Debtors have not—and cannot—point to any circumstances that would warrant the significant deviation from the well-established precedent of this District and should not be allowed to let these cases linger at the expense of the estates' interests. Thus, the Ad Hoc Committee believes that a 100-day extension of the Exclusivity Periods is more appropriate. If, as that period approaches, the Debtors believe they need a further extension, they should be required to come back to this Court to demonstrate why that relief is warranted.

## RESERVATION OF RIGHTS

9.  The Ad Hoc Committee reserves the right to supplement this objection, as well as to respond to any supplemental pleading filed in support of the Motion.

## CONCLUSION

**WHEREFORE**, the Ad Hoc Committee respectfully requests that the Court: (i) sustain this objection; (ii) refuse to grant an extension of the Exclusivity Periods by more than 100 days; and (iii) grant such further relief to the Ad Hoc Committee as the Court deems just and proper.

Dated: December 16, 2019
New York, New York

**MILBANK LLP**

By: */s/ Dennis F. Dunne*
Dennis F. Dunne, Esq.
Samuel A. Khalil, Esq.
Andrew M. Leblanc, Esq.
MILBANK LLP
55 Hudson Yards
New York, New York 10001
Telephone:   (212) 530-5000
Facsimile:   (212) 530-5219

*Counsel for the Ad Hoc Committee
of Second Lien Noteholders*