**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**

| | ) | |
|---|---|---|
| In re: | ) | Chapter 11 |
| | ) | |
| WINDSTREAM HOLDINGS, INC., *et al.*,[1] | ) | Case No. 19-22312 (RDD) |
| | ) | |
| Debtors. | ) | (Jointly Administered) |
| | ) | |

**ORDER AUTHORIZING (I) THE DEBTORS
ENTRY INTO THE BACKSTOP COMMITMENT
AGREEMENT AND (II) PAYMENT OF RELATED FEES AND EXPENSES**

Upon the motion (the "Motion")[2] of the above-captioned debtors and debtors in possession (collectively, the "Debtors"), for entry of an order (this "Order"), authorizing (I) the Debtors entry into the Backstop Commitment Agreement, a copy of which is attached to the Motion as **Exhibit B** and (II) payment of related fees and expenses; all as more fully set forth in the Motion; and this Court having jurisdiction over this matter pursuant to 28 U.S.C. §§ 157(a)-(b) and 1334(b) and the *Amended Standing Order of Reference from the United States District Court for the Southern District of New York*, dated January 31, 2012, as a core proceeding pursuant to 28 U.S.C. § 157(b) that this Court may decide by a final order consistent with Article III of the United States Constitution; and this Court having found that venue in this district is proper pursuant to 28 U.S.C. §§ 1408 and 1409; and this Court having found that the Debtors' notice of the Motion's request for relief and the opportunity for a hearing thereon were appropriate under the circumstances and

---

[1] The last four digits of Debtor Windstream Holdings, Inc.'s tax identification number are 7717. Due to the large number of Debtors in these chapter 11 cases, for which joint administration has been granted, a complete list of the debtor entities and the last four digits of their federal tax identification numbers is not provided herein. A complete list of such information may be obtained on the website of the Debtors' claims and noticing agent at http://www.kccllc.net/windstream. The location of the Debtors' service address for purposes of these chapter 11 cases is: 4001 North Rodney Parham Road, Little Rock, Arkansas 72212.

[2] Capitalized terms used but not otherwise defined herein have the meanings ascribed to them in the Motion.

no other notice thereof need be provided; and upon all of the pleadings filed in response to the Motion and the replies thereto; and upon the record of the evidentiary hearing held by the Court on May 7 and 8, 2020 and all of the proceedings herein; and, after due deliberation and for the reasons stated by the Court in its bench ruling at the conclusion of the Hearings, this Court having determined that the legal and factual bases set forth in the Motion and at the hearing establish good and sufficient cause for the relief granted herein, in that the transactions authorized hereby are a proper exercise of business judgment, will materially assist the Debtors' ability to emerge from chapter 11, and are in the best interests of the Debtors' estates and creditors; now, therefore, it is HEREBY ORDERED THAT:

1. The Motion is granted as set forth herein.

2. The Debtors are authorized to: (a) enter into the Backstop Commitment Agreement, (b) comply with the terms of the Backstop Commitment Agreement, (c) effect the relief granted herein, and (d) take any and all actions necessary to implement the terms of the Backstop Commitment Agreement (except for actions that require further orders of the Court).

3. The Backstop Commitment Agreement shall be binding and specifically enforceable against the parties thereto in accordance with its terms *provided that* Section 9.4(b) of the Backstop Commitment Agreement is hereby deemed amended and restated in its entirety as follows:

> (b) Within three (3) Business Days following the termination of this Agreement, the Debtors shall make payments of the Equity Backstop Premium to the Equity Backstop Parties or their designees based upon their respective Equity Backstop Percentages on the date of payment, by wire transfer of immediately available funds to such accounts as the Requisite Backstop Parties may designate; provided, however, if this Agreement is terminated because the Bankruptcy Court denies confirmation of the Plan, the Equity Backstop Premium shall be reduced to $30,000,000; and, provided, further, that the Equity Backstop Premium shall not be payable in the event of (i) a termination of this Agreement by the Company pursuant to Section 9.3(b) (Breach of this Agreement) and

        (ii) a termination of this Agreement pursuant to Section 9.2(a)(ii) or Section 9.3(e) (Termination of the RSA) as a result of a termination of the Plan Support Agreement by the Company pursuant to Section 13.03(b) thereto as a result of a breach by an Equity Backstop Party.  To the extent that all amounts due in respect of the Equity Backstop Premium pursuant to this Section 9.4(b) have actually been paid by the Debtors to the Equity Backstop Parties in connection with a termination of this Agreement, the Equity Backstop Parties shall not have any additional recourse against the Debtors for any obligations or liabilities relating to or arising from this Agreement, except for liability for (i) gross negligence or willful or intentional breach of this Agreement pursuant to Section 9.4(a) and Section 3.3.  Except as set forth in this Section 9.4(b), the Equity Backstop Premium shall not be payable upon the termination of this Agreement.

4.       The Equity Backstop Fees are hereby approved as reasonable and shall not be subject to any avoidance, reduction, setoff, recoupment, offset, recharacterization, subordination (whether contractual, equitable, or otherwise), counterclaims, cross-claims, defenses, disallowance, impairment, or any other challenges under any applicable law or regulation by any person or entity.

5.       The Equity Backstop Fees and any indemnities payable under the Backstop Commitment Agreement are actual and necessary costs of preserving the Debtors' estates and as such shall be treated as allowed administrative expenses of the Debtors pursuant to sections 503(b)(1) and 507(a)(2) of the Bankruptcy Code.

6.       The Debtors are authorized to offer, sell, distribute, pay, and/or reimburse, as applicable, the Equity Backstop Fees in accordance with the terms of the Backstop Commitment Agreement; *provided*, that upon entry of this Order, the Debtors shall promptly pay the any amounts then owing on account of the Expense Reimbursement in accordance with the terms of the Backstop Commitment Agreement.

7.       The Equity Backstop Fees shall not be discharged, modified, or otherwise affected by any chapter 11 plan of the Debtors, dismissal of these cases, or conversion of these chapter 11

cases to chapter 7 cases, nor shall any of such amounts be required to be disgorged upon the reversal or modification on appeal of this Order.

8. The Debtors are authorized, but not directed, to enter into amendments to the Backstop Commitment Agreement from time to time as necessary, subject to the terms and conditions set forth in the Backstop Commitment Agreement and without further order of the Court.

9. Notice of the Motion as provided therein shall be deemed good and sufficient notice of such Motion and the requirements of Bankruptcy Rule 6004(a) and the Local Rules are satisfied by such notice.

10. Notwithstanding the possible applicability of Bankruptcy Rules 6004(h), the terms and conditions of this Order shall be immediately effective and enforceable upon its entry, sufficient cause having been shown.

11. The Debtors are authorized to take all actions necessary to effectuate the relief granted pursuant to this Order in accordance with the Motion.

12. This Court retains exclusive jurisdiction with respect to all matters arising from or related to the implementation, interpretation, and enforcement of this Order.

Dated: White Plains, New York
      May 13, 2020

*/s/Robert D. Drain*
THE HONORABLE ROBERT D. DRAIN
UNITED STATES BANKRUPTCY JUDGE